**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **KEVIN A. BIRDO, #B28737,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:15-cv-00456-NJR** |
| | ) | |
| **PRISONER REVIEW BOARD,** | ) | |
| **TRANSFER COORDINATOR,** | ) | |
| **DIRECTOR I.D.O.C.,** | ) | |
| **KIMBERLY BUTLER,** | ) | |
| **CHRISTOPHER MATHIS, and** | ) | |
| **S. HILL,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Kevin Birdo is currently incarcerated at the Menard Correctional Center in Menard, Illinois. (Doc. 1 at 1.) Proceeding *pro se*, Birdo has filed a civil rights action pursuant to 42 U.S.C. § 1983 against two corrections counselors and the warden of Menard, as well as a number of other prison officials throughout Illinois. (*Id.*) Birdo claims that officials violated his due process rights and engaged in retaliation against him for his previous alleged assault against a corrections officer at Menard. (*Id.* at 5.) He seeks monetary damages and injunctive relief, and he has also requested "emergency" relief in the narrative of his complaint. (*Id.*)

This matter is now before the Court for an expedited review of Birdo's complaint pursuant to 28 U.S.C. § 1915A, as well as consideration of his emergency request for relief. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under 28 U.S.C. § 1915A, the court "shall identify

cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## The Complaint

On January 12, 2000, Birdo was accused of assaulting Bryan Wagner, a corrections officer at Menard, while boarding a Menard bus headed for Logan Correctional Center. (Doc. 1 at 6.) In May 2003, Birdo was convicted for aggravated battery against Wagner and sentenced to seven and a half years. (*Id.*) One of the corrections officers who testified against Birdo in the battery case was an officer named Cowan, who also works at Menard. (*Id.*) According to Birdo, Cowan held a grudge related to the assault–Cowan came across Birdo in the Will County Courthouse in August 2013 and told Birdo that he was "still waiting on [Birdo] to come to Menard," a statement that Birdo interpreted as a "subtle threat." (*Id.*)

In April 2014, Birdo was told that he was transferring from Pontiac Correctional Center to Menard. (*Id.* at 7.) He expressed concerns about the transfer to an internal affairs officer at Pontiac, but the transfer still went through–Birdo moved to Menard in late April 2014. (*Id.*)

Since arriving at Menard, Birdo claims that he has suffered from various instances of retaliation "because of [his] alleged assault of former or current Corrections Officer Bryan Wagner." (*Id.* at 8.) Due to the Wagner assault, Birdo claims that officers have denied him access to meals, denied him access to the law library, broken his television, withheld his legal mail concerning cases in the Northern District of Illinois and Will County, and housed him with a cellmate who has a "perverse sexual nature" and a "criminal sexual history." (*Id.* at 5, 7-8.) He also claims that his counselors at Menard (S. Hill and Christopher Mathis) have failed to

process his transfer request and his request for restoration of good time credits, also "because of retaliation against [Birdo] for allegedly assaulting Bryan Wagner." (*Id.* at 11-13.)

Birdo claims that he has written grievances about most or all of this conduct but they have come up missing. (*Id.* at 4.) He also claims that he has written letters to various Illinois officials, including the Director of the Illinois Department of Corrections, the Transfer Coordinator, and the Prison Review Board, all to no avail. (*Id.* at 8.) Unsatisfied with the prison's response, he filed the instant § 1983 complaint on April 24, 2015. (*Id.* at 1.)

## Discussion

Birdo's complaint focuses on retaliation by several officials, so the Court will begin with those claims. Birdo alleges that Mathis and Hill retaliated against him for the Wagner assault by failing to process his transfer request (**Count 1**) and his application for discretionary credit restoration (**Count 2**), that unknown defendants retaliated against him for the Wagner assault by failing to provide him with safe housing (**Count 3**), and that unknown defendants retaliated against him for the Wagner assault by failing to provide him with access to his mail (**Count 4**). To put forth a retaliation claim, a prisoner must show that "he engaged in activity protected by the First Amendment," that "he suffered a deprivation that would likely deter First Amendment activity in the future," and that the "First Amendment activity was 'at least a motivating factor in the Defendants' decision to take the retaliatory action.'" *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (*quoting Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).

Here, all of Birdo's retaliation claims fail at the first step, as Birdo has not alleged that he engaged in activity safeguarded by the First Amendment. Birdo's complaint states that the retaliation occurred because of his assault on Wagner: he says that officers responsible for his housing issues "retaliate[d] against [him] because of [his] alleged assault" of Wagner, that

Mathis and Hill have not processed his applications "because of retaliation against [him] for allegedly assaulting Bryan Wagner," and that he "believe[s]" the prison warden is blocking his mail "to retaliate . . . about the alleged assault of Bryan Wagner." (Doc. 1 at 8, 11, 13, 14.) Birdo is right that prisoners have limited free speech rights, and an associated right to be free of retaliation for exercising those rights. *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011). And a prisoner's right to free speech encompasses several different types of "protected activities," including filing a grievance and bringing a lawsuit. *Turley v. Rednour*, 555 F. App'x 606, 609 (7th Cir. 2014). That said, "protected activity" does not include assault or battery against an officer. *See*, *e.g.*, *Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) ("[A] physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment."); *United States v. Soderna*, 82 F.3d 1370, 1375 (7th Cir. 1996) (physical blockade was not protected conduct); *McElroy v. Unknown Parties*, No. No. 14-cv-01020, 2014 WL 5396172, at *2 (S.D. Ill. Oct. 21, 2014) (dismissing claim because "restraining a guard" and "physical assault" are not activities "protected under the First Amendment"). Because Birdo alleges that the officials' conduct was motivated by his assault of Wagner, **Counts 1 through 4** must be dismissed without prejudice. If Birdo has engaged in other protected activity that he believes may have motivated the conduct discussed above, he has 35 days from the date of this order to allege as much in an amended complaint, or he will face dismissal of these claims with prejudice.

Birdo also claims that Mathis and Hill failed to process his application for a transfer to another prison, thereby violating his due process rights (**Count 5**). To state a due process claim, a prisoner must first "allege that he has a cognizable liberty interest under the Fourteenth Amendment." *O'Gorman v. City of Chicago*, 777 F.3d 885, 891 (7th Cir. 2015). In the transfer context, prisoners have a liberty interest when they are transferred to a supermax-style facility

whose conditions would impose "atypical and significant hardship in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). In those limited circumstances, inmates are "entitled to informal, nonadversarial due process" prior to the transfer. *Westefer v. Neal*, 682 F.3d 679, 684 (7th Cir. 2012). Outside of these circumstances, however, prisoners do not have a liberty interest in a "transfer from one institution to another within the state prison system." *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *see also Meisberger v. Cotton*, 181 F. App'x 599, 600 (7th Cir. 2006) ("[T]ransfers from one prison to another with a more adverse condition of confinement do not affect a recognized liberty interest."); *King v. Fairman*, 997 F.2d 259, 262 n.4 (7th Cir. 1993) (noting that "an inmate has no liberty interest in confinement at any particular state prison" and "prison officials may effect discretionary transfers of an inmate without implicating the due process clause"). Here, Birdo is not attacking his initial transfer from Pontiac to Menard, but is instead claiming that he has a due process right related to his discretionary transfer out of Menard and into another institution. Because he lacks a liberty interest in such a transfer, his due process claim must fail.

Birdo tries to skirt dismissal of his transfer claim by stating that he has a procedural due process right to have his transfer application submitted, even if he lacks a protectable liberty interest in the ultimate transfer. Not so. The essential ingredient of a due process claim is a protected liberty interest–without that liberty interest, there is no process due. *See*, *e.g.*, *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (the "alleged mishandling" of a grievance could not support a due process claim, as "grievance procedures" do not "by their very existence create interests protected by the Due Process Clause"); *Solomon v. Elsea*, 676 F.2d 282, 284 (7th Cir. 1982) ("It is axiomatic that before due process protections can apply, there must first exist a protectable liberty or property interest."). In other words, a prisoner cannot have a due process

claim concerning the "mishandling" of a transfer request if he has no underlying "liberty interest" in a transfer to another facility. *Courtney v. Devore*, 595 F. App'x 618, 621 (7th Cir. 2014). Because Birdo has no procedural due process rights related to his transfer request out of Menard and into another facility, **Count 5** must be dismissed with prejudice.

Birdo's claim concerning his right to apply for a discretionary restoration of his good conduct credits (**Count 6**) fails for similar reasons. To be sure, prisoners typically have a "liberty interest in good time credits," and are "entitled to due process before the State may revoke those credits." *Cochran v. Buss*, 381 F.3d 637, 638 (7th Cir. 2004). But Birdo is not attacking the initial revocation of his credits; instead, he wants to apply for a discretionary restoration of his credits pursuant to ILL. ADMIN CODE tit. 20, § 107.160(c). In this vein, the discretionary provision or restoration of credits creates no liberty interest. *See, e.g., Hadley v. Holmes*, 341 F.3d 661, 665 (7th Cir. 2003) (noting that the prospective good time sought by the prisoner was "entirely within the control of the Director," and there is "no due process protection for action that merely *might* affect the duration of the sentence"); *Montgomery v. Anderson*, 262 F.3d 641, 645 (7th Cir. 2001) (no liberty rights for system "making release entirely discretionary"); *Hallmark v. Johnson*, 118 F.3d 1073, 1079 (5th Cir. 1997) (no "protected liberty interest in the restoration of good time credits" previously "forfeited for disciplinary infractions"). And without a liberty interest, there can be no due process claim for "mishandling" a request. *Courtney*, 595 F. App'x at 621. Because Birdo has no due process rights in the submission of his application, **Count 6** must be dismissed with prejudice.

Birdo has also raised some vague allegations concerning his conditions at Menard. He claims that officers have exposed him to unsafe conditions by housing him with an inmate who has a "perverse sexual nature," and that officers broke his television, denied him meals on some

occasions, and denied him access to the law library. (Doc. 1 at 7-8.) In making these allegations, Birdo may have intended to bring a separate claim related to those conditions (**Count 7**). To bring a conditions claim, a prisoner must allege facts showing that the "conditions complained of were sufficiently serious," and must also show that "prison officials were deliberately indifferent" to those conditions. *Rice ex rel. Rice v. Correctional Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012). Birdo runs into trouble on the second prong: he does not allege facts showing that one or more of the defendants were personally involved in these matters, as they would be if they had "direct participation" in the conditions or "knew" about the conditions and "acquiesced" to them. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). While Birdo does allege some involvement in the conditions by Officer Cowan and other prison officers, neither Cowan nor any other officers were named in the caption of the complaint, and thus they cannot be treated as defendants in this case. *See* FED. R. CIV. P. 10(a) (caption of a case "must name all the parties"); *see also Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (for an individual to be properly considered a party he must be "specif[ied] in the caption"). Because Birdo has not alleged involvement by one or more of the named defendants, **Count 7** is dismissed without prejudice. Birdo has 35 days from the date of this order to clarify this count in an amended complaint, or it will be dismissed with prejudice.

As his last claim, Birdo alleges that his outgoing and incoming legal mail is being opened and thrown out by prison staff, in violation of his right to receive legal mail (**Count 8**) and his right to access the courts (**Count 9**). Specifically, in early 2015, Birdo attempted to send documents to his attorney in an action in the Northern District of Illinois, but his attorney did not receive them–a failure he attributes to prison staff. (Doc. 1 at 8-10.) In addition, Birdo claims that he did not receive mail from the Northern District of Illinois and from Jefferson County

concerning his cases for an extended period.  (*Id.* at 13-14.)  This claim suffers from the same defect that Birdo's conditions of confinement claim suffers from:  to bring a claim concerning interference with mail, Birdo must allege that a defendant "was personally responsible for the deprivation," as he would if he was directly involved in the mail issues or if he "knew about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye" to it.  *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).  Birdo lays the responsibility for these conditions mostly at the feet of Officer Hastings and unnamed mail staff, but again, those parties are not named in the caption, so they will not be considered as defendants.  *Myles*, 416 F.3d at 551-52. Birdo does state that he "believe[s]" that Warden Butler is involved, but his allegations do not lay out how Butler was directly involved or how the issues occurred with her "knowledge and consent."  *Gentry*, 65 F.3d at 561.  As such, **Counts 8 and 9** must be dismissed without prejudice.  As was the case for his conditions claim, Birdo has 35 days from the date of this order to allege how one or more of the named defendants were personally involved in his mail interference and access to courts claims, or those claims will be dismissed with prejudice.

One closing note concerning Birdo's complaint:  Birdo wrote the word "emergency" on the top of his complaint and indicated that he was asking the Court to proceed in an "emergency capacity" in his narrative.  (Doc. 1 at 1 & 6.)  The Court will construe this request as a motion for a temporary restraining order.  Under Federal Rule of Civil Procedure 65, a temporary restraining order may issue only if it "clearly appears from the specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition."  In the prisoner context, these orders are typically necessary "to prevent a substantial risk of serious injury from ripening into actual harm."  *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

Here, the Court is of the opinion that a temporary restraining order should not issue in this matter, as Plaintiff's allegations do not demonstrate the likelihood of immediate and irreparable harm before defendants can be heard.  Many of Birdo's claims have been dismissed with prejudice, meaning there is no risk of irreparable harm related to those allegations.  As for Birdo's other claims, there is not a likelihood of harm before defendants can respond.  While Birdo alleges that his current cellmate has a perverse sexual nature, he does not claim that his cellmate has threatened or assaulted him in any way.  In addition, while Birdo alleges that another prisoner at Menard was killed in October 2014 by a violent cellmate, Birdo does not claim that he has been threatened with physical harm or otherwise attacked.  Accordingly, Plaintiff's motion for a temporary restraining order is denied without prejudice.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **Count 5** and **Count 6** are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that **Count 1, Count 2**, **Count 3**, **Count 4**, **Count 7**, **Count 8**, and **Count 9** are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's motion for a Temporary Restraining Order is **DENIED** without prejudice.  Plaintiff is free to file subsequent motions for injunctive relief, including a separate motion for a preliminary injunction, upon filing a First Amended Complaint.

**IT IS FURTHER ORDERED** that, should Plaintiff wish to proceed with this case, Plaintiff shall file his First Amended Complaint within 35 days of the entry of this order (on or before **June 5, 2015**).  He should label the form First Amended Complaint, and he should use the case number for this action.  For Counts 1 through 4, Plaintiff should include those allegations that show that he engaged in protected activity, and that one or more of the defendants named in

his First Amended Complaint caused or participated in retaliation against him due to his protected activity.  For Count 7, Plaintiff should indicate what conditions at Menard he finds objectionable and explain how one or more of the defendants named in his First Amended Complaint caused or participated in those conditions.  For Counts 8 and 9, Plaintiff should explain what acts were taken to interfere with his legal mail and explain how one or more of the defendants named in his First Amended Complaint caused or participated in those actions.

An amended complaint supersedes and replaces all previous complaints, rendering previous complaints void.  *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004).  The Court will not accept piecemeal amendments to a complaint.  Thus, the First Amended Complaint must stand on its own, without reference to any other pleading.  Should the First Amended Complaint not conform to these requirements, it shall be stricken.  Plaintiff must also re-file any exhibits he wishes the Court to consider along with the amended complaint.  Failure to file a First Amended Complaint shall result in the dismissal of this action with prejudice.  Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).  No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

**IT IS FURTHER ORDERED** that Plaintiff's motion for Recruitment of Counsel (Doc. 3) is held in **ABEYANCE** pending receipt of a First Amended Complaint.

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7**

**days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

      **IT IS SO ORDERED.**

      **DATED:  May 1, 2015**

                                                       _____
                                                      **NANCY J. ROSENSTENGEL**
                                                      **United States District Judge**